## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| REBECCA OHLER | : | |
| 426 York Street | : | |
| Hanover, PA 17331 | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | No.: _____ |
| | : | |
| v. | : | |
| | : | |
| SNYDERS-LANCE, INC. | : | |
| *d/b/a* Snyder's of Hanover | : | |
| PO BOX 32368. | : | **JURY TRIAL DEMANDED** |
| Charlotte, N.C. 28232 | : | |
| and | : | |
| S-L SNACKS NATIONAL, LLC | : | |
| P. O. Box 32368 | : | |
| Charlotte, NC 28232 | : | |
| and | : | |
| S-L SNACKS PA, LLC | : | |
| Post Office Box 32368 | : | |
| Charlotte, NC 28232 | : | |
| | : | |
| Defendants. | : | |
| | : | |

### CIVIL ACTION COMPLAINT

Rebecca Ohler (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) by and through her undersigned counsel, hereby avers as follows:

### INTRODUCTION

1.      Plaintiff has initiated this action to redress violations by Snyder-Lance, Inc. *d/b/a* Snyder's of Hanover, S-L Snacks National, LLC, and S-L Snacks PA, LLA of Title VII of the Civil Rights Act of 1964 ("Title VII – 42 U.S.C. §§ 200(d) *et seq*.)/ the Pregnancy Discrimination Act ("PDA"), the American's with Disabilities Act, as amended ("ADA" – 42

U.S.C. §§ 12101 *et seq.*) and the Pennsylvania Human Relations Act ("PHRA").[1]  As a direct

consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

## JURSIDICTION AND VENUE

2.      This Court has original subject matter jurisdiction over the instant action pursuant

to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and

seeks redress for violations of federal laws.

3.      This Court may properly assert personal jurisdiction over Defendants because

their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction

over Defendants to comply with traditional notions of fair play and substantial justice, satisfying

the standards set forth by the United States Supreme Court in *International Shoe Co. v.

Washington*, 326 U.S. 310 (1945) and its progeny.

4.      Pursuant to 28 U.S.C. § 1392(b)(1) and (b)(2), venue is properly laid in this

district because Defendants are deemed to reside where they are subjected to personal

jurisdiction, rendering Defendants residents of the Middle District of Pennsylvania.

5.      Plaintiff is proceeding herein under the ADA and Title VII after properly

exhausting all administrative remedies with respect to such claims by timely filing a Charge of

Discrimination with the Equal Employment Opportunity Commission ("EEOC") and by filing

the instant lawsuit within ninety (90) days of receiving a notice of dismissal and/or right to sue

letter from the EEOC.

---

[1] Plaintiff's claim under the PHRA is referenced herein for notice purposes.  She is required to wait 1 full year before initiating a lawsuit from date of dual-filing with the EEOC.  Plaintiff must however file her lawsuit in advance of same because of the date of issuance of her federal right-to-sue-letter under the ADA and Title VII. Plaintiff's PHRA claims however will mirror identically her federal claims under the ADA and Title VII.

## PARTIES

6.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7.     Plaintiff is an adult individual, with an address set forth in the caption.

8.     Defendant Snyder-Lance, Inc. *d/b/a* Snyder's of Hanover (*hereinafter* "Defendant") is a corporation with a mailing address indentified in the above-caption operating in food production, food distribution, and canning.

9.     Defendant S-L Snacks National, LLC, upon information and belief, operates as a subsidiary of Defendant Snyder's-Lance, Inc. and has the same mailing address as Defendant Snyder-Lance, Inc.

10.     Defendant S-L Snacks PA, LLC upon information and belief, operates as a subsidiary of Defendant Snyder's-Lance, Inc. and has the same mailing address as Defendant Snyder-Lance, Inc. and Defendant S-L Snacks National, LLC.

11.     Plaintiff received documentation during her employment with Defendants which indicated that she was an employee of Snyder-Lance, Inc. as well as an employee of "S/L Snacks."

12.     Upon information and belief, because of their interrelation of operations, common ownership or management, centralized control of labor relations, common ownership or financial controls, and other factors, Defendants are sufficiently interrelated and integrated in their activities, labor relations, ownership and management that they may be treated as a single and/or joint employer for purposes of the instant action.

3

13.     At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the Defendants.

## **FACTUAL BACKGROUND**

14.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

15.     Plaintiff is a female individual.

16.     On or about January 26, 2017, Plaintiff began employment with Defendants as a Packer.

17.     While employed with Defendants, Plaintiff was a dedicated and hard-working employee who performed her job well. To demonstrate, Plaintiff was promoted from her Packer position to a Forklift Operator in or about April of 2017.

18.     In or about June of 2017, Plaintiff notified David Leach (Warehouse Manager, *hereinafter* "Leach") and Rebecca Emlet (Human Resources Supervisor, *hereinafter* "Emlet") that she was approximately five months pregnant.

19.     Plaintiff informed Leach and Emlet that she was on a medical restriction from her doctor to not lift over 20 pounds, but that her work restriction would not be a problem because the core and essential functions of her actual Forklift Operator job did not require her to generally lift (as she drove all day).

20.     Shortly after notifying Defendants' management and Human Resources Department (*hereinafter* "HR Department") of her pregnancy and lifting restriction, Plaintiff was told to go on medical disability.

4

21.     In response to Defendants' instructions (discussed in Paragraph 16 of this Complaint), Plaintiff refused, informing Defendants' management again that she could do her job effectively and that her pregnancy and lifting restriction did not interfere with her core job duties.

22.     Against her wishes, Defendants' management and HR involuntarily forced Plaintiff on an unpaid medical leave in or about mid-July of 2017.

23.     Upset about her aforesaid forced unpaid medical leave, Plaintiff complained to Defendants' management and HR Department that she was being discriminated against due to her pregnancy.

24.     In or about late-July of 2017, Plaintiff had a meeting with Leach and Emlet regarding her aforesaid forced medical leave.  In said meeting, Emlet informed Plaintiff that Defendants put her on medical leave so she would not get injured during her pregnancy.

25.     Following the aforementioned meeting, Plaintiff was allowed to return to work but was put on strict restrictions from Leach and Emlet, including but not limited to, no bending or forklift use because Defendants perceived Plaintiff as being unable to perform her job duties due to her pregnancy, despite not having any medical documentation supporting such contention or restrictions.

26.     From in or about late-July of 2017 (when she was permitted to return to work after her forced medical leave) until her termination date (discussed further *infra*), Plaintiff experienced increased hostility from Defendants' management and HR, including but not limited to Leach, Emlet and her supervisor Adam Trimmer (Supervisor, *hereinafter* "Trimmer") who regularly disciplined Plaintiff for alleged pretextual performance issues.

27.     From in or about late-July through in or about early-October of 2017, Plaintiff was written up approximately 3-4 times for allegedly moving and placing items into the wrong area; however, these write-ups were completely pretextual and Plaintiff explained each time she was written-up to Leach and Trimmer that she was not placing the items in the wrong spot and that she did not understand why they were writing her up.

28.     In or about late-September of 2017, Plaintiff complained to HR that she believed the aforesaid write-ups were discriminatory in nature due to her pregnancy. In response, Defendants' HR department did not properly investigate or resolve her concerns and simply told Plaintiff that her write-ups were not discriminatory and that she needed to improve her performance.

29.     On or about October 6, 2017, Plaintiff was terminated from Defendants for alleged performance issues, even though Plaintiff did not have any performance issues prior to Defendants' management and HR becoming aware of her pregnancy and subsequent complaints of pregnancy discrimination.

30.     Plaintiff therefore believes and avers that her termination was completely pretextual and that she was really terminated because (1) of her pregnancy; (2) Defendants' management perceived her to be disabled; and/or (3) in retaliation for her complaints of discrimination.

## COUNT I
### Violations of Title VII/PDA
### ([1] Pregnancy Discrimination; [2] Retaliation; [3] Hostile Work Environment)
### -Against All Defendants-

31.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

32.    After Defendants' management and HR became aware of Plaintiff's pregnancy, Plaintiff was forced to take unpaid medical leave even though she was fully capable of the performing the essential job duties of her position.

33.    Following Plaintiff's forced unpaid medical leave, Plaintiff expressed concerns of pregnancy discrimination to Defendants' management and HR.

34.    In response, Plaintiff was temporarily allowed to return to work but under strict work limitations (which were not imposed by her doctor) and under increased scrutiny which led to a barrage of pretextual discipline.

35.    Following Defendants' discriminatory and retaliatory behavior, Plaintiff once again complained to Defendants' HR that she was being discriminated against due to her pregnancy.

36.    Defendants' HR did not properly investigate, remedy, or resolve Plaintiff's multiple complaints of discrimination and instead terminated her employment for pretextual reasons shortly following her last complaint of discrimination.

37.    Therefore, Plaintiff believes and avers that she was subjected to a hostile work environment, issued several pretextual disciplinary actions, and ultimately terminated from Defendants because of her pregnancy and/or she complained of pregnancy discrimination to Defendants' management.

38.    These actions as aforesaid constitute unlawful discrimination and retaliation under Title VII/PDA.

## COUNT II
### Violations of the Americans with Disabilities Act, as amended ("ADA")
### (Perceived Disability Discrimination)
### -Against All Defendants-

39.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

40.     Defendants became aware of Plaintiff's pregnancy and lifting restriction in or about June of 2017.

41.     Following notification of Plaintiff's pregnancy, Defendants' management and HR told Plaintiff to take disability based on their perceived concerns that she could not effectively do her job.

42.     Plaintiff initially refused Defendants' management's aforesaid request.

43.     Shortly thereafter, Defendants involuntarily forced Plaintiff to take an unpaid medical leave against her wishes even though she had been performing (and could still perform) the essential functions of her job effectively.

44.     While Plaintiff was eventually permitted to return to work (for a short period of time) following her complaints of discrimination, Defendants imposed stringent work restrictions on Plaintiff that were not medically documented or supported because they perceived her to be a liability based on her pregnancy.

45.     Defendants continued to subject Plaintiff to ongoing hostility and animosity upon her return from forced medical leave, including but not limited to being issued multiple pretextual disciplines.

46.     On or about October 6, 2017, Defendants eventually terminated Plaintiff's employment for completely pretextual reasons.

47.     Therefore, Plaintiff believes and avers she was subjected to a hostile work environment, issued pretextual discipline, and eventually terminated from Defendants because Defendants' management and HR perceived her to be disabled.

48.     This action as aforesaid constitutes unlawful discrimination under the ADA.

**WHEREFORE**, Plaintiff prays that this Court enter and Order providing that:

A.     Defendants are to promulgate and adhere to a policy prohibiting discrimination in the future against any employee(s);

B.     Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, promotions, reinstatement and seniority;

C.     Plaintiff is to be awarded punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

D.     Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress, pain, suffering, and humiliation); and

E.     Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____

Ari R. Karpf, Esq.
3331 Street Rd.
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Date:  May 22, 2018

10